## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROBERT STEVENSON,     :
     Plaintiff,     :
     :
v.     :     3:20-cv-01518 (VLB)
     :
COMMISSIONER ANGEL QUIROS,     :
et al.,     :
     Defendants.     :

### INITIAL REVIEW ORDER

Plaintiff Robert Stevenson, an inmate in the custody of the Department of Correction ("DOC"), has brought this action under 42 U.S.C. § 1983 against DOC interim Commissioner Angel Quiros in his official capacity, Corrigan-Radgowski Correctional Institution Warden Martin in his official capacity, Administrative Remedies Coordinator King in her individual and official capacities, Director of Security Santiago in his individual and official capacities, and Acting Director of Security Hartnett in his individual and official capacities.   Compl. [ECF No. 1].[1] Plaintiff seeks damages, a declaratory judgment, and injunctive relief in connection with Defendants' alleged violation of his federal rights under the United State Constitution's First Amendment and Fourteenth Amendment, and his state law rights under the Connecticut Constitution.

For the following reasons, the Court will permit Plaintiff's federal constitutional claims to proceed beyond initial review.

---

[1] Plaintiff is proceeding *in forma pauperis.*   [ECF No. 9].

## I.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*   Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.   A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).   A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).   Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility.   *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II.    ALLEGATIONS

**Plaintiff's complaint alleges the following facts in support of his claims.**

On July 15, 2020, Plaintiff was given a publication rejection notice from Coordinator King for one of Plaintiff's publications that had pages ripped out of it. [ECF No. 1 ¶ 1].   Plaintiff was given another notice stating that another of his publications had been sent for review.   *Id.*

On July 16, 2020, Plaintiff filed a grievance challenging the removal of pages from his publication, noting Coordinator King said the pages were ripped out because they were sexually explicit, but did not provide a detailed explanation of the basis for her characterization.   *Id.* ¶ 2.

On July 20, 2020, Plaintiff received a publication rejection from Coordinator King, stating that his publication had been rejected due to sexually explicit material without any detailed explanation for the rejection.   *Id.* ¶ 4.   That same day, Plaintiff wrote an appeal and grievance asking why his publication material had been rejected.   *Id.*

On August 12, 2020, Acting Director Hartnett denied Plaintiff's July 20, 2020 appeal, for the stated reason that Plaintiff's publication contained sexually explicit material.   *Id.* ¶ 5.   On August 21, 2020, Plaintiff received a response to his appeal filed July 16, 2020, from Acting Director Hartnett, stating that his publication had been rejected due to its sexually explicit material and threat to the security and discipline of the facility.   *Id.* ¶ 3.

Although Defendants King and Hartnett stated that Plaintiff's publications were rejected due to sexually explicit material and posed a threat to security and discipline, they have permitted other publications with material concerning sex and security issues written by Caucasian authors (including, *inter alia* James Patterson, Jackie Collins, and Vince Flynet) into the facility, and they have included these publications in the prisoner's library; they have also allowed the sexually explicit, Caucasian-owned publication of "Letters to Penthouse" into the facility. *Id.* ¶¶ 6-9.   Plaintiff's publications that were rejected by Defendants King and Hartnett are from a Black-owned publisher that publishes the same type of material published by Caucasian authors or from Caucasian-owned publishers which Defendants King and Hartnett have allowed into the facility.   *Id.* ¶ 10.

III.    DISCUSSION

Plaintiff alleges that his Fourteenth Amendment equal protection and First Amendment rights were violated by Defendants King's and Hartnett's treatment of his publications.

However, as an initial matter, the Court observes that Plaintiff has not alleged any conduct by Defendant Santiago in the body of the complaint.   The personal involvement of a defendant "in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."   *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).   The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering

4

or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted).

To the extent Plaintiff seeks to hold Defendant Santiago liable for damages under a theory of supervisory liability, he must allege facts establishing Santiago was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[2]   In addition to satisfying one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *see also Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (plaintiff must show "an affirmative causal link" between the supervisor's involvement and the constitutional injury.).   A

---

[2] The Second Circuit has observed that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]"   *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).   However, without further Second Circuit guidance on this issue, the court assumes for purposes of this ruling that the categories outlined in *Colon* remain valid.

general allegation that a defendant failed to supervise subordinates is insufficient to establish personal involvement without a factual connection between that supervisory defendant's alleged failure and the alleged resulting harm to the plaintiff.  *See Samuels v. Fischer,* 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2016) (citing cases).  Because Plaintiff has failed to allege Defendant Santiago's personal involvement in the alleged constitutional violations, the Court will dismiss the clams against Defendant Santiago without prejudice.

> A.    First Amendment

The First Amendment protects a prisoner's right to the "free flow" of incoming mail.  *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).   However, this right is not absolute, and prison officials may regulate a prisoner's right to receive mail as long as they do so in a way that is "reasonably related to legitimate penological interests."  *Id.* (quoting *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987)).  Relevant to Plaintiff's claims, the Court takes judicial notice of Administrative Directive 10.7 that governs review of incoming publications.[3]

Administrative Directive 10.7(4)(N) provides:

N. Incoming Publications and Educational Materials.... Incoming materials which adversely affect a valid penological interest may be rejected in accordance with the following review procedures:

1. Procedures for Review of Publications.  The Unit Administrator or designee may reject a publication only if it is determined to be detrimental

---

[3] Administrative Directive 10.7 (effective June 19, 2012) is available on the DOC website.  *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (Court may "take judicial notice of relevant matters of public record.").

to the security, good order, or discipline of the facility or which may facilitate criminal activity.   The Unit Administrator or designee may not reject a publication solely because its content is religious, philosophical, political, social or sexual, or because its content is unpopular or repugnant. Publications which may be rejected by a Unit Administrator or designee include but are not limited to publications which meet one of the following criteria:

...

g.  it is sexually explicit material, either pictorial or written, which by its nature or content poses a threat to the security, good order, or discipline of the facility, facilitates criminal activity or harasses staff.

1)  Pictorial sexually explicit material that shall be rejected by a Unit Administrator or designee is any visual depiction of sexual activity or nudity, ... unless those materials which, taken as a whole, are literary, artistic, educational or scientific in nature.

Pictorial depiction of sexual activity is defined as the visual depiction of conduct which includes but is not limited to:

• sexual intercourse, including genital-genital, oral-genital, or oral-anal contact, whether between persons of the same sex or opposite sex, with any artificial device, or any digital penetration;

• bestiality;

• masturbation;

• sadistic or masochistic abuse;

• depiction of bodily functions, including urination, defecation, ejaculation, or expectoration;

• conduct involving a minor, or someone who appears to be under the age of 18; and

• sexual activity which appears to be non consensual, forceful, threatening or violent.

Pictorial depiction of nudity is defined as the visual depiction or display of genitalia, pubic region, buttock, or female breast at a point below the top of the areola that is not completely and opaquely covered.[4]

2)  Written sexually explicit material that may be rejected by a Unit Administrator or designee include but is not limited to written material which, by its nature or content, poses a threat to the security, good order, or discipline of the facility, or facilitates criminal activity. A Unit Administrator or designee shall determine that written sexually explicit material of the following types is to be excluded:

---

[4]  A new definition for the definition of nudity was approved for inclusion "as practicable" on January 15, 2014: "Pictorial depiction of nudity is defined as the visual depiction or display of genitalia, pubic region, anus, or female breast where the areola is visible and not completely and opaquely covered." *See https://portal.ct.gov/DOC/AD/AD-Chapter-10.*

1) sado-masochistic;
2) bestiality;
3) involving minors; or
4) materials depicting sexual activity which involves the use of force or without the consent of one or more parties.
...
3) Possession or transferring of pictorial sexually explicit materials will result in the issuance of a Class 'A' Discipline in accordance with Administrative Directive 9.5 Code of Penal Discipline.

In reviewing the validity of prison regulations, courts apply the factors set out by the Supreme Court in *Turner v. Safley*: (1) whether there is a "valid, rational connection" between the regulation and the legitimate government interest put forward to justify it; (2) whether inmates have alternative means of exercising the burdened right; (3) what impact accommodating the right would have on guards, other inmates, and prison resources generally; and (4) how the regulation compares to proposed alternatives.  482 U.S. 78, 89 (1987); *Johnson*, 445 F.3d at 535; *see also Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004).   The *Turner* factors apply to both facial and as-applied challenges.  *Azukas v. Arnone*, No. 3:14-CV-721 (RNC), 2017 WL 1282196, at *2 (D. Conn. Mar. 31, 2017) (citing *United States v. Reid*, 369 F.3d 619, 626 (1st Cir. 2004)).

This Court recently determined that the provisions of Administrative Directive 10.7 relevant to review of sexually explicit materials satisfied the *Turner* factors and were not unconstitutionally vague in violation of the First Amendment or Fourteenth Amendments.  *See Reynolds v. Cook*, No. 3:13-cv-00388 (SRU), 2020 WL 1140885, at *14-24 (D. Conn. Mar. 9, 2020) ("For all the above reasons, the

2012 ban is not unconstitutional under the First or Fourteenth Amendments, either facially or as applied to the Plaintiffs.").

Because Defendants removed certain pages from Plaintiff's publication and therefore Plaintiff's allegations could not fully describe the content of his rejected materials, the Court will permit Plaintiff's as-applied First Amendment challenge to Defendants King's and Hartnett's treatment of his publication materials to proceed beyond initial review for further development.

B.    Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV.   It does not mandate identical treatment for each individual or group of individuals.   Instead, it requires that similarly situated persons be treated the same.   *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"   *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).   Absent allegations to support "class-based" discrimination, an individual may state an equal protection claim by alleging that

9

he or she has been intentionally and "irrationally singled out as a . . . class of one." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008).   A plausible class of one claim requires the plaintiff to demonstrate an "'extremely high degree of similarity'" with the person to whom he or she is comparing himself or herself. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

Here, Plaintiff's allegations indicate that he is bringing plausible class-based equal protection claims based on Defendants King's and Hartnett's more favorable treatment for publications from Caucasian publishers or by Caucasian authors for than those from Black publishers or by Black authors.   Alternatively, Plaintiff's allegations also suggest plausible class of one equal protection claims based on such conduct.   At this initial stage in this proceeding, the Court will construe Plaintiff's allegations most liberally and permit his equal protection claims to proceed against Defendants King and Hartnett.

C.    Official Capacity Claims

Plaintiff seeks a declaration that Defendants violated his constitutional rights and an injunctive order for Plaintiff to receive his publications and for Defendants to stop rejecting his publications.   [ECF No. 1 at 9 ¶¶ 1-2].

As a preliminary matter, Plaintiff may not seek monetary relief from Defendants in their official capacities on his federal claims because such a request is barred by the Eleventh Amendment.   *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary

relief, also protects state officials sued for damages in their official capacities); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity— notwithstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation and quotation omitted).

However, this exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief."). Thus, the Court must dismiss Plaintiff's request for declaratory relief as not plausible.

With respect to Plaintiff's request for injunctive relief, he has alleged plausible ongoing First and Fourteenth Amendment violations based on Defendants' treatment of his publications alleged in his complaint. Accordingly, the Court will permit his claim for injunctive relief to proceed against Defendants

11

Quiros, Martin, Santiago, Hartnett, and King in their official capacities for further

development.[5]

     D.    State Law Claims[6]

     The Court must also consider whether Plaintiff has stated a violation under

---

     [5] A defendant's personal involvement in the constitutional violation is not relevant to an official capacity claim lodged against that defendant. *See Vaughan v. Aldi*, No. 3:19-cv-00107 (JAM), 2019 WL 1922295, at *2 (D. Conn. Apr. 29, 2019) (citing *Gonzalez v. Feinerman*, 666 F.3d 311, 315 (7th Cir. 2011) (*per curiam*) (holding prison warden was proper defendant for official-capacity claim seeking injunctive relief, although he lacked personal involvement in alleged constitutional violation)). However, a defendant official must have the authority to provide the requested relief. *See Scozzari v. Santiago*, No. 3:19-cv-00229 (JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019) (claim for injunctive relief may only proceed against a defendant to the extent that a defendant has the power to remedy the alleged on-going constitutional violation); *Ex parte Young*, 209 U.S. at 157 (defendant official must have some connection with enforcement of allegedly unconstitutional act); *Loren v. Levy*, No. 00 Civ. 7687 (DC), 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003) ("actions involving claims for prospective ... injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action."); s*ee* also *Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *8 (S.D.N.Y. Mar. 22, 2018) (retired defendants do not have the authority to rectify any ongoing constitutional violations). The Court may take up this issue if relevant in due course.

     [6] This Court can exercise supplemental jurisdiction over a state law claim if: (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact. *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), abrogated on other grounds, *Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Because Plaintiff asserts state law claims that derive from the same factual predicate as his plausible federal claims, the court may exercise supplemental jurisdiction over Plaintiff's plausible state law claims that do not raise a novel and complex issue of state law. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raised a novel or complex issue of State Law....").

Article First of the Connecticut Constitution.[7]   Plaintiff references violation of his rights under the Connecticut Constitution in connection with the rejection of his publication materials.   [ECF. No. 1 at 8 ¶ 3].   The Court construes Plaintiff as alleging violation of Article First, Sections 4[8], 5,[9] and 20[10] of the Connecticut Constitution.   [ECF No. 1 ¶¶ 36-39].

The Connecticut Supreme Court recognized a private cause of action for monetary damages under Article I, sections 7 and 9 of the Connecticut Constitution where the claims arose out of unreasonable searches and seizures and unlawful arrest by police officers.   *Binette v. Sabo*, 244 Conn. 23, 47-49 (1998).   In reaching its decision, the Connecticut Supreme Court "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution."   *Id.* at 47.   However, the Connecticut Supreme Court has not recognized a private cause of action under Article First in the context of a case filed by an inmate or a detainee involving claims relating to denial of his right to possess or review certain material

---

[7]   To the extent Plaintiff seeks prospective relief against Defendants in their official capacities for violations of the Connecticut Constitution or state law, those claims are barred by the Eleventh Amendment under *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).   *See Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020).

[8]   Article First, Section 4 provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

[9]   Article First, Section 5 provides: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press."

[10]   Article First, Section 20 provides: "No person shall be denied equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

sent to him in prison or in the context of an equal protection claim.   Accordingly, this Court has routinely declined to consider claims involving a private right of action under Article First, Sections 4, 5, and 20 of the Connecticut Constitution. *See Richard v. Strom*, No. 3:18-cv-01451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) (no established private right of action under Article First, Sections 3, 8, and 20); *Doe v. Crowley v. Town of Enfield*, No. 3:14-cv-01903 (MPS), 2015 WL 4162435, at *3 (D. Conn. July 9, 2015) (declining to recognize a private right of action under Article First, Sections 8 and 20); *Lopez v. Smiley*, 375 F. Supp. 2d 19, 23-26 (D. Conn. 2005) (declining to exercise supplemental jurisdiction over novel, complex and undeveloped claims under Article First, Sections 4, 5, 7, 8, 9, and 14). Thus, the Court concludes that it is inappropriate to exercise supplemental jurisdiction over these claims brought under the Connecticut constitution that raise new and undeveloped issues under state law. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raised a novel or complex issue of State Law...."). Accordingly, the Court must dismiss these claims without prejudice.

IV.   ORDERS

For the foregoing reasons, the Court enters the following orders:

(1) The case shall proceed on Plaintiff's First and Fourteenth Amendment claims against Defendants Hartnett and King in their individual capacities. Plaintiff's claim for injunctive relief based on ongoing violations of his First and

14

Fourteenth Amendment rights may proceed against Defendants Quiros, Martin, Santiago, Hartnett, and King in their official capacities.

Any claims for damages against Defendant Santiago are DISMISSED without prejudice.   The Court declines to exercise supplemental jurisdiction over Plaintiff's Connecticut Constitutional claims, which are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(1).

Plaintiff may file an amended complaint, within 35 days of this Order's filing date, to allege facts to correct the deficiencies with his claim for damages against Director of Security Santiago as identified in this initial review order.   Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

 (2) The clerk shall verify the current work address of Defendants Administrative Remedies Coordinator King and Acting Director of Security Hartnett with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within twenty-one (21) days of this Order, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing.   If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The **Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.   The U.S. Marshal Service is directed to effect service of the Complaint and this Order on Interim Commissioner Angel Quiros, Warden Martin, Director of Security Santiago, Acting Director of Security Hartnett, and Administrative Remedies Coordinator King in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within twenty-one (21) days from the date of this Order and to file a return of service within thirty (30) days from the date of this Order.**

(3) **The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.**

(4) **Defendants shall file a response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.   If Defendants choose to file an answer, defendants shall admit or deny the allegations and respond to the cognizable claims recited above.   Defendants may also include any and all additional defenses permitted by the Federal Rules.**

(5) **Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within six months (180 days) from the date of this Order.   Discovery requests need not be filed with the Court.**

(6) **The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.   The Order can also be found at http://ctd.uscourts.gov/administrative-**

16

**standing-orders**.

(7) All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.   If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court.   Failure to do so can result in the dismissal of the case.   Plaintiff must give notice of a new address even if he is incarcerated.   He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.   It is not enough to just put the new address on a letter without indicating that it is a new address.   If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.   He should also notify Defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.   Plaintiff is advised that the Program may be used only to file documents with the court.   Local court rules provide that discovery requests are not filed with the Court.   D. Conn. L. Civ. R. 5(f).   Therefore, discovery requests must be served on Defendants' counsel by regular mail.

_____/s/_____
**Vanessa L. Bryant**
**United States District Judge**

**SO ORDERED at Hartford, Connecticut this 7th day of December, 2020.**